JOE S. PRICE, AUDITOR, *et al. v.* J. S. HANEY.

(Division A. Feb. 17, 1936.)

[165 So. 815. No. 31988.]

(Division A. Oct. 5, 1936.)

[169 So. 832. No. 31988.]

472

**W. W. Pierce,** Assistant Attorney-General, for appellants.

Hannah & Simrall, of Hattiesburg, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This case is a companion to, and is ruled by, Price v. Haney, 163 So. 684, 174 Miss. 176.

As there appears, the patrolman had the right to take possession of the automobile truck, and as it was affixed to and practically a part of the truck, he had also the right to take possession of and retain the truck's license tag to be returned to the appellee along with the truck, should he ultimately be held to be entitled to the return thereof.

Whether the patrolman had the right, himself, to make the threatened arrest, as to which we express no opinion, is of no consequence. He had the right to cause the arrest to be made by a regular police officer.

Reversed and bill dismissed.

**Smith, C. J.,** delivered the opinion of the court on suggestion of error.

The appellee by a suggestion of error challenges the statement in our former opinion reversing the decree of

the court below, 165 So. 815, that this case is controlled by the companion case of Price v. Haney, 174 Miss. 176, 163 So. 684, 164 So. 590, and asserts that, on the contrary, our former holding herein is in conflict therewith; we will therefore reconsider our former opinion in the light of this criticism thereof, and if there is error therein we will be glad to correct it.

The case began with a bill of complaint by the appellee against Joe S. Price, auditor of public accounts, and Greer and Tullos, whose connection herewith will hereinafter appear, on which a temporary injunction of the character hereinafter set forth was issued. Before the case came on for trial, the appellee filed an amended lengthy bill of complaint alleging, in substance, that while he was driving an automobile truck owned by him, loaded with merchandise owned by and which he was transporting for the American Oil Company, over a public highway passing through Magee, Miss., he was there stopped by Greer, a patrolman appointed under section 19, c. 126, Laws 1934, and by Tullos, who purported to be, but was not, such a patrolman, but was a deputy sheriff, and who asserted (as the evidence discloses as a fact) that appellee's truck was loaded beyond the capacity he was authorized to transport therein under the privilege tax paid thereon, evidenced by the license tag attached to the truck. That these officers removed the license tag from the truck and treated the complainant with great indignity, Greer being then armed with a pistol; they informed the complainant that if he proceeded with his truck without paying the privilege tax required for the use of it in transporting merchandise of the weight then on it they would arrest him. That the complainant had been advised that he did not owe the tax and was unwilling to pay it. That the officers "wrongfully withheld from complainant the possession of his said truck from about the middle of the afternoon of Wednesday, August 8, 1934, until about two o'clock P. M., on Friday, August 10, 1934, at which time

the complainant procured a writ of replevin to be served upon the said Greer; whereupon the sheriff of Simpson County, Mississippi, took the said truck into his possession and, whereupon, complainant gave to the Sheriff a forthcoming bond for the said truck.'' That immediately thereafter the officers ''informed complainant that he could not move the said truck over the streets and public highways of the State of Mississippi without subjecting himself to arrest, and that if he made any attempt to move the said truck from its then location that they would immediately place him under arrest,'' resulting in the complainant being ''compelled to permit the said truck to remain on the public street in the busiest section of the Town of Magee, from about two o'clock in the afternoon on Friday, August 10, 1934, until about two o'clock P. M., on Sunday, August 12, 1934, at which time he removed the said truck under injunctive process issued out of this Court.'' That during all of this time, because the officers claimed not to be responsible therefor, the complainant was compelled to guard the truck, incurring thereby inconvenience and a specified expense. After denying that the auditor of public accounts, and the patrolmen acting under his control, were clothed with authority ''to arrest either the person or property of this complainant,'' the bill of complaint continues, ''said defendant, Joe S. Price, and his patrols and/or auditors, have willfully, wantonly, deliberately and maliciously set about to distort from this complainant a sum of money which they charge he was due to pay as an additional motor vehicle tax; and, likewise, they have wantonly, wrongfully, deliberately and maliciously undertaken to harass and embarrass complainant to make him disgorge and pay the said tax in violation of the rights guaranteed to him by the Constitution of the State of Mississippi and by the Fourteenth Amendment to the Constitution of the United States, and in violation of the decisions of the Supreme Court of the State of Mississippi and of the United

States." "That after the said defendants had undertaken to distort from him the sums of money as hereinbefore set out, and had subjected him to the humiliation and embarrassment of detaining his truck on the public streets in the Town of Magee, and after he had undertaken to invoke the due process of the law to determine whether the said State Auditor of Public Accounts was correct in his contention, or whether the complainant in this case was correct in his contention, that the said defendants, notwithstanding all of said facts, sought to further humiliate and embarrass this complainant by immediately notifying him that he could not move said truck from said location without subjecting himself to criminal prosecution."

The prayer of the bill is for a temporary injunction, which was granted, and for a decree "commanding and requiring the defendants to restore to the complainant the license tag above referred to and, likewise, enjoining the defendants, each and all of them, from further interfering with the complainant in the operation of the said motor truck. And upon final hearing, complainant further prays that the Court adjudge and decree to the complainant damages, actual and punitive, in the aggregate amount of $10,000.00, sustained by the complainant and wrongfully inflicted upon him by the said defendants because of the many wrongful, illegal and unlawful acts hereinbefore set forth."

Price, the auditor of public accounts, Greer and Tullos were made defendants to the bill, and answered it, denying the bill's allegations of wrongful conduct by Greer and Tullos, admitting that they stopped the appellee and demanded that he pay the privilege tax due by him thereon; denying that Greer and Tullos took the truck into their possession; admitting that they told the appellee that he would be subject to criminal prosecution if he continued to further operate the truck without paying the privilege tax due thereon, but denying that they told him they would arrest him if he so did.

The court below, in its decree, set forth a finding of facts substantially in accord with the allegations of the bill of complaint, and decreed, "that the temporary injunction heretofore issued in this cause commanding and requiring the State Auditor to restore the possession of the tag so wrongfully removed from said truck to the possession of the complainant otherwise restraining and enjoining the said defendants, Joe S. Price, E. H. Greer and Charlie Tullos from in any manner interfering with the complainant in the use and operation of his aforesaid truck be, and the same is hereby, made permanent and the sureties on the said temporary injunction bond are hereby fully and finally discharged from all liability herein," and that the complainant have and recover of the defendants the sum of one thousand five hundred dollars as damages.

Chapter 126, Laws 1934, imposes the privilege tax on motor vehicles here in question, section 19 of which charges the auditor of public accounts with the duty of administering the statute, and authorizes him to employ patrolmen who "shall devote their entire time, . . . to the enforcement of the motor vehicle laws so far as they may apply to trucks, busses, and other motor vehicles moving over the highways of this state," and that "it shall be the duty of the sheriff in cooperation with the auditor of public accounts to enforce the terms of this act." One of the paragraphs of section 20 of the statute is as follows: "All taxes, penalties and costs imposed by this act shall constitute a first lien on any motor vehicle operated in violation of the provisions hereof, and any such motor vehicle shall be subject to being seized and impounded to enforce collection thereof. Any sheriff, deputy sheriff, constable, police officer or any other officer authorized to make an arrest is hereby authorized to arrest without warrant any person operating or driving any motor vehicle contrary to the provisions of this act within the limits of their respective jurisdiction and/or to seize and impound any

motor vehicle being operated in violation of the provisions hereof. In case of such arrest or seizure, proceedings shall be had as provided by section 5582 of the Code of 1930.''

Section 5582, Code 1930, provides, in part, that: ''Any constable, peace officer, police officer, or other officer authorized to make an arrest is hereby authorized to arrest without warrant any person running or operating, or causing to be run or operated, any motor vehicle contrary to the provisions of this chapter, within the limits of their respective jurisdictions. And in case the owner, or person or persons operating, or causing to be operated, a motor vehicle shall be taken into custody because of a violation of any provision hereof, he or they may be forthwith taken before an accessible justice of the peace, or police justice or mayor having jurisdiction of such offense, and be entitled to an immediate hearing.''

Greer was introduced as a witness by the appellee and admitted that he stopped the appellee, demanded that he pay the additional privilege tax on the truck, removed the license tag therefrom, and told the appellee that he would arrest him if he proceeded further therewith without paying the tax, but that he did not arrest Mr. Haney or his truck. On being asked, ''You did not institute suit at that time to collect additional taxes, did you,'' he answered, ''No, at that time, Mr. Haney was making an effort to raise the money to pay the tax.'' His evidence discloses the following questions and answers:

''Q. You understood from the State Auditor that you had the right to detain that truck until the operator paid the additional tax; is that correct? Mr. Price had instructed you that you had a perfect right to detain that truck until Mr. Haney paid the tax? A. Our instructions are that we have the right to detain any vehicle that's delinquent.

''Q. Without instituting any suit to collect taxes?

A. We don't always do it that way. If he can pay, we don't care about taking it into court.

"Q. Your instructions are that you can just take a man up and take his tag and go off and leave him? A. No, I have never had any instructions from Mr. Price that I could just take a man up and go off and leave him.

"Q. When you were detaining him, were you not operating under instructions from Mr. Price? A. Specific instructions from Mr. Price about this particular machine?

"Q. Or general instructions? A. Yes, those are the general instructions from Mr. Price.

"Q. That you had a right to detain any truck you thought additional taxes due on, without instituting suit for that purpose? A. If we could settle on that basis; that's the procedure.

"Q. And to hold any truck until the man paid the taxes? A. No.

"Q. You simply were going to hold the truck until he paid it? A. I was holding this truck on those conditions because Mr. Haney when I picked him up—he was making an effort to, as I thought, to raise the money to pay the additional tax."

Also the following:

"Q. The tag, as I understand, has been restored to Mr. Haney, hasn't it? A. We have a return registered card from Gulfport signed by Mr. Haney."

Greer admitted that he was armed with a pistol at the time he stopped the appellee, which he always carried while in the discharge of his duties as a patrolman.

Before the truck was replevied it was weighed with and without its contents, and the difference between the two weights disclosed that it was loaded largely in excess of what the privilege tax paid thereon permitted.

In the direct examination of the complainant, who testified in his own behalf, the following questions and answers appear:

"Q. State whether or not you suffered any embarrassment or humiliation by reason of the action of the State Auditor in detaining you. A. Just like anybody else. An officer comes up and arrests you it makes you feel bad. Crowds gather around you and it makes you feel mighty bad.

"Q. State to the court whether or not you were expecting to be picked up. A. No, I wasn't. I might have known I was overloaded, but I hadn't been overloaded before and I hadn't given it any thought."

In his cross-examination appear the following:

"Q. When Mr. Greer stopped you out there he didn't undertake to abuse you in any way, did he? A. No, he was mighty nice to me.

"Q. And when he had your truck tied up he asked you if you had enough money to take care of yourself, did he not? A. Yes sir.

"Q. And offered to let you have some money, did he not? A. No, he didn't offer me any; I didn't understand it if he did. I don't remember him offering me any money.

"Q. You do tell the court he was nice to you? A. Yes, he was nice to me.

"Q. He didn't do anything to hurt your feelings other than to tell you you didn't have the proper privilege tax, did he? A. No, he didn't insult me.

"Q. You tell the court he didn't harass you and just keep after you? A. No, he stayed around there with me.

"Q. He and Mr. Tullos. A. Yes sir. . . .

"Q. When Mr. Greer first stopped you down there you made an effort to get the money to pay for the extra privilege tax, did you not? A. Yes."

Some time, exactly when does not appear, before the action of replevin was instituted, the truck was removed from where it was when Greer stopped the appellee. We will assume, for the purpose of the argument, that this

was done by Greer, resulting in his then taking actual possession of the truck.

It may be that the appellee had a plain, adequate, and complete remedy at law, i. e., in the legal proceedings which the auditor should have begun, had he not been prevented by the replevin suit, and, for that reason, the injunction should be denied. We will pretermit any discussion of this question, however, for the reason that even if his remedy at law was not plain, adequate, and complete, the appellant was not entitled to the injunction prayed for.

The truck being unquestionably loaded beyond the capacity permitted by the privilege tax paid thereon, the questions for decision are: (1) Did Greer and Tullos have the right to stop the appellee and refuse to permit him to proceed further with the truck without paying the privilege tax due therefor? (2) Should this question be answered in the affirmative: Did they exceed their authority in doing and saying what they did do and say after they stopped the appellee? (3) Did they have the right to arrest the appellee after he replevied the truck, if he continued to operate it without paying the privilege tax due thereon? (4) Was the appellee entitled to a decree directing the return to him of the privilege tax tag removed by them from the truck? And (5) Is the appellee entitled to damages for what Greer and Tullos did and said?

1. Price v. Haney, 174 Miss. 176, 163 So. 684, 685, 164 So. 590, relied on in our former opinion, was an appeal from the judgment rendered in the action of replevin, to which reference has been hereinbefore made. The court there held that Greer had the "right to seize and impound the truck pending the necessary legal proceedings to enforce the payment of the additional license tax," and rendered a final judgment awarding the possession of the truck to him.

2. We come next to the appellee's complaint that because Greer did not take the truck into his actual

possession, but left it where it was when he stopped it, the appellee was compelled to incur inconvenience and expense in remaining near and guarding the truck from trespassers. In the replevin case, 174 Miss. 176, 163 So. 684, 685, 164 So. 590, the court also said: "It is true he [Greer] had no right to hold the truck indefinitely without taking steps for that purpose. However, the record does not show an unreasonable delay; he seized the truck on the 8th of August, and on the 10th appellee brought replevin for it. Appellee had an easy and effective way of regaining possession of his truck by paying the additional tax."

In an opinion overruling a suggestion of error, 174 Miss. 176, at page 186, 163 So. 684, 164 So. 590, at page 591, the court further said that, "the appellee was trying to make arrangements by which he could get a release of the truck, and was being indulged in that effort by the officer, and instead of appellee being damaged, it was beneficial to him."

If the facts there presented appear here, the rule there governs here, but the appellee says that the evidence here demonstrates that the state auditor had no intention of enforcing the claimed privilege tax by any court proceeding, but intended to retain possession of the truck until the claimed privilege tax was paid, and, in addition, to arrest the appellee if he attempted to operate the truck on the highway without paying the claimed tax. The evidence here relied on appears in the following letter written by an attorney for the appellee to the state auditor on August 8, 1934:

"The American Oil Company called me this afternoon advising that your deputy, Mr. Greer, had arrested and was holding a truck belonging to the American Oil Company, driven by Mr. Haney, on the ground that it had not paid the proper amount of tax. I thereupon wired you as follows: 'Am advised your deputy has arrested and is holding truck belonging to American Oil Company at Magee, claiming has not paid proper tax.

Stop. We are giving you notice that damages will result to our client because this unlawful detention and we shall proceed against you and your official bondsmen unless this truck and contents are immediately released.' I am not going to burden you with a renewed discussion of my views about the law in this matter because I think you will sufficiently understand my views on this subject. I am merely confirming the facts stated in my telegram; that is, if you are of the opinion that you have a right to arrest and hold these trucks and cargoes until such time as people pay the tax, you will simply have to find out whether or not that is the law by letting the Supreme Court decide it. If this cargo is not released by tomorrow, we will have to arrange another delivery, and will expect you and your official bondsmen to pay us whatever damages we sustain.

"Cordially yours."

On August 10th, the state auditor replied to this letter as follows:

"Replying to your letter and telegram of August 8th, concerning our detention of a certain truck operated by Mr. Haney, and confirming our conversation while you were in the office yesterday, permit me to say, first, that it was my purpose to write you yesterday, but due to the fact that I was called out of the office to act as pall bearer at a funeral, which was held out in the country, I was unable to get around to this matter. As stated to you, the American Oil Company may have the contents of the load on this truck at any time they wish. It has never been our policy, and is not now our policy, to retain the load of any vehicle taken into custody any longer than is absolutely necessary to get matters adjusted so as to permit the load to continue on its way. Regarding the truck, we think we are acting within the law, in fact, performing our duty according to the law by retaining the possession of the truck until some satisfactory arrangement is made to have same procure the road and bridge privilege tax required for carrying

the tonnage in question in this instance. As soon as such an arrangement is made, Mr. Haney may have his truck. We have no desire to retain it unnecessarily. We are sorry that it becomes necessary, in the performance of our duty, as prescribed by law, to detain the truck of any operator, but we frequently find it necessarily to do so until proper adjustment can be made. Assuring you of our desire to cooperate with you, I am,

"Yours very truly."

Construing this letter in connection with the evidence heretofore set forth, it cannot be said that the auditor intended to hold the truck indefinitely without instituting the legal proceedings required of him, which the replevin suit prevented him from instituting. If the appellee had the right to the injunction prayed for, it could only be to restrain the appellants from unduly delaying to institute the necessary proceedings for its condemnation. It is clear, from the evidence, that the delay in instituting proceedings for the condemnation of the truck was for the accommodation of the appellee— to enable him to obtain the money with which to pay the tax. Had the appellee obtained possession of the truck without paying the required privilege tax, that fact would not have relieved him or the truck from liability for the tax, or prevented the auditor from again proceeding against him or the truck therefor.

3. As we said in our former opinion herein, to which we adhere, "whether the parolman had the right, himself, to make the threatened arrest, as to which we express no opinion, is of no consequence. He had the right to cause the arrest to be made by a regular police officer," to which we may add that Tullos was such, and, as the evidence discloses, had been employed by Simpson county, in which the town of Magee lies, under sections 5583, 5584, Code 1930, "to patrol the roads of the county and to enforce the road and motor vehicle laws."

4. The evidence seems not to justify the appellee's claim that the privilege tax tag had not been returned

to him, but aside from that, by being affixed to the truck it was a part of the equipment thereof "to be," as said in our former opinion (165 So. 815), "returned to the appellee along with the truck, should he ultimately be held to be entitled to the return thereof," to which return he was not entitled, as appears from Price v. Haney, 174 Miss. 176, 163 So. 684, 164 So. 590, unless and until he paid the privilege tax thereon.

5. The foregoing disposes of the right of the appellee to an injunction, and assuming for the purpose of the argument that when that right disappeared he was still entitled to a decree for the damages claimed, provided the evidence justified the imposition thereof, it is clear therefrom that the evidence did not so justify. His complaint that Greer sought to and did subject him to humiliation and embarrassment by what he said and did is negatived by his own evidence.

The suggestion of error will be overruled.